IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GENESIS INSURANCE COMPANY,        )
                                  )
            Plaintiff,            )   No. 03 C 4444
                                  )
      v.                          )   Judge Ronald A. Guzmán
                                  )
FTD.COM INC.,                     )
                                  )
            Defendant.            )
                                  )

## MEMORANDUM OPINION AND ORDER

In this suit, Genesis Insurance Company seeks a declaration that it has no obligation to indemnify FTD.COM in connection with shareholder litigation that was brought against it in Delaware. FTD.COM has filed a counterclaim seeking a declaration of coverage and damages for Genesis' breach of contract. The case is before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, Genesis' motion is granted and FTD.COM's motion is denied.

### Facts[1]

In 1993, FTD.COM was created as a business unit of Florists' Transworld Delivery, Inc. ("FTDI"). (Genesis' LR 56.1(a)(3) Stmt. ¶ 15.) In 1994, IOS Brands Corp. acquired FTDI and its FTD.COM operations. (*Id.* ¶ 19.) In May 1999, FTD.COM was incorporated as a separate entity in the State of Delaware. (*Id.* ¶ 16.) At the time, FTDI, and its parent IOS, owned 83% of

---

[1] Unless otherwise noted, the following facts are undisputed.

FTD.COM's equity and 98% of the shareholder voting power. (*Id.* ¶¶ 18, 19.) The remaining 17% of FTD.COM's stock was publicly traded. (*Id.* ¶ 32.)

In September 2001, Genesis issued Policy No. YXB002259A ("the policy") to FTD.COM. (*Id.* ¶ 3.) The policy requires Genesis to pay "'on behalf of [**FTD.COM**], **Loss** which [**FTD.COM**] is required to indemnify, or which [**FTD.COM**] may legally indemnify the **Directors** and **Officers**, arising from **Claims** first made during the **Policy** (or **Discovery**) **Period** . . . .'" (*Id.* ¶ 5 (quoting Crosno Decl., Ex. 1, Policy at GEN 3847) (emphasis in original).)

The policy defines "Loss" as "'such amounts which [**FTD.COM**] is required to indemnify the **Directors** and **Officers**, or such amounts which [**FTD.COM**] may legally indemnify the **Directors** and **Officers** . . . .'" (*Id.* ¶ 8 (quoting Crosno Decl., Ex. 1, Policy, Endorsement No. 5 at GEN 3860) (emphasis in original).) The policy defines "Claim" as:

> "the following matters against an insured party for money damages or other relief, whether brought within or outside of the United States: (1) any civil, arbitration or administrative proceeding commenced by: (a) service of a complaint or similar pleading, or (b) receipt of a notice of charges; (2) any criminal proceeding commenced by the return of an indictment or an information; (b) any appeal from the above proceedings; or (4) other written or verbal demand for money or services."

(*Id.* ¶ 10 (quoting Crosno Decl., Ex. 1, Policy, Endorsement No. 5 at GEN 3860).)

The policy contains an allocation provision, which states:

> "[I]f both **Loss** covered by this Policy and other losses are incurred, either because a **Claim** includes both covered and non-covered matters, or because a **Claim** is made against both covered and non-covered parties, then the **Directors, Officers**, [**FTD.COM**] and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of all such amounts. In making such determination, the parties shall take into account the relative legal and financial exposure, and the relative benefits obtained in connection with the defense and/or settlement, of and between the covered and non-covered parties and matters involved in the claim . . . ."

2

(*Id.* ¶ 12 (quoting Crosno Decl., Ex. 1, Policy, Endorsement No. 5 at GEN 3863) (emphasis in original).) It also contains a "consent to settlement" provision, which prohibits FTD.COM and its directors and officers from "'admit[ting] liability for or settl[ing] any **Claim** . . . without the **Insurer's** prior written consent.'" (*Id.* ¶ 13 (quoting Crosno Decl., Ex. 1, Policy at 3852) (emphasis in original).) Moreover, the policy says that "'[a]ny **Defense Costs** incurred, and/or settlements or judgments agreed to prior to the **Insurer's** consent shall not be covered by [the] Policy.'" (*Id.*)

On October 25, 2001, the boards of directors of IOS and FTD.COM held a special meeting to discuss the possibility of combining IOS, FTDI and FTD.COM. (*Id.* ¶ 23.) FTD.COM formed a Special Committee, consisting of outside directors Samuel Hill and Richard Owen, to evaluate the potential transaction. (*Id.* ¶ 24.) At the time, Hill and Owen did not own any IOS or FTDI stock and did not serve as officers or directors of either company. (*Id.* ¶¶ 26-27.) The Special Committee hired an independent law firm and an independent accounting firm to assist with the evaluation. (*Id.* ¶ 30.)

Between October 2001 and March 2002, the Special Committee negotiated with IOS concerning IOS' proposed acquisition of the 17% of FTD.COM's stock that was publicly traded. (*Id.* ¶ 32.) In February 2002, members of IOS management tentatively agreed to an IOS/FTD.COM merger with a merger exchange ratio of .26 shares of IOS common stock for each share of FTD.COM stock. (*Id.* ¶ 35.) On March 2, 2002, the Special Committee recommended, and the FTD.COM Board approved, the proposed merger agreement. (*Id.* ¶¶ 36-39.) On the same day, the IOS Board approved the merger. (*Id.* ¶ 40.) Once the transaction was consummated, IOS changed its name to FTD, Inc., and FTD, Inc., through its wholly-owned subsidiary FTDI, owned 100% of the stock of FTD.COM. (*Id.* ¶ 43.)

The merger agreement contains the following indemnification provision:

"IOS shall, or shall cause the Surviving Corporation [FTD.COM] to indemnify, defend and hold harmless each person who is now, or has been at any time prior to the date hereof or who becomes prior to [the effective date of the merger], a director or officer of the Company (collectively, the *'Indemnified Parties')* against (i) all losses, claims, damages, costs and expenses (including reasonable attorneys' fees and expenses), liabilities, judgments and settlement amounts that are paid or incurred in connection with any claim, action, suit, proceeding or investigation . . . that is based on, or arises out of, the fact that such Indemnified Party is or was a director or officer or agent of the Company and relates to or arises out of any action or omission occurring at or prior to [the effective date of the merger] (the *'Indemnified Liabilities'*), and (ii) all Indemnified Liabilities based on, or arising out of, or pertaining to this Agreement or any of the transactions contemplated hereby. . . ."

(*Id.* ¶¶ 46-48 (quoting Crosno Decl., Ex. 3, IOS/FTD.COM Jt. Proxy Stmt., Annex A, Merger Agreement at F011121).)

The day after the merger was announced, the price of FTD.COM's stock fell from $9.00 to $6.00 per share. (FTD.COM's LR 56.1(b)(3)(B) Stmt. ¶ 2.)[2]

A few days later, IOS, FTDI, FTD.COM and seven members of the FTD.COM Board, including Special Committee members Hill and Owen, were named as defendants in a consolidated class action suit filed in Delaware state court on behalf of the public stockholders of FTD.COM. (Genesis' LR 56.1(a)(3) Stmt. ¶ 52.) The plaintiffs alleged that the controlling shareholders of FTD.COM had breached their fiduciary duties to the public shareholders by allowing IOS to acquire FTD.COM at an unfair price. (*Id.* ¶¶ 55-56.) Among other things, the plaintiffs sought additional consideration for the shares of FTD.COM that IOS acquired in the merger. (*Id.* ¶ 61; FTD.COM's LR 56.1(b)(3)(A) Stmt.¶ 61.)

---

[2]Genesis did not submit a response to FTD.COM's LR 56.1(b)(3)(B) statement of additional material facts. Consequently, by operation of the Local Rule, Genesis is deemed to have admitted them.

4

On May 3, 2002, the FTD.COM Board issued a unanimous written consent in lieu of meeting that authorized the indemnification of its directors in the shareholder litigation. (Genesis' LR 56.1(a)(3) Stmt. ¶ 63.)

In August 2003, the parties to the shareholder litigation reached a settlement. (*Id.* ¶ 77.) The plaintiffs agreed to dismiss the shareholder litigation in exchange for $10.7 million of Class A common stock of FTD, Inc. (*Id.* ¶ 78.) The settlement agreement states that FTD, Inc. will issue that stock "on behalf of all Defendants [and] at its sole expense." (Levine Aff. Supp. FTD.COM's Mot. Partial Summ. J., Ex. 6, Settlement Agreement at F018036.)

On October 20, 2003, after the settlement was reached, FTD.COM signed a promissory note in favor of FTDI. (FTD.COM's LR 56.1(a)(3) Stmt. ¶ 25.) The note states that FTD, Inc. agreed to pay $10.7 million to settle the shareholder litigation on behalf FTD.COM and obligates FTD.COM to pay that amount on demand, to FTDI, FTD, Inc.'s assignee. (Levine Aff. Supp. FTD.COM's Mot. Partial Summ. J., Ex. 8, Promissory Note at F015636.) The note also says that the settlement amount will be apportioned among FTD, Inc., FTDI and FTD.COM "on the basis of each party's respective liability under the [shareholder] litigation," after this suit is concluded. (*Id.* at F015636.) FTD.COM has paid to FTDI the amount due under the promissory note. (*Id.*, Ex. 9, Wolfe Dep. at 122.)[3]

---

[3]Genesis disputes the fact that the promissory note was paid because "[n]o evidence of payment by FTD.COM to FTDI has been produced." (*See* Genesis' LR 56.1(b)(3)(A) Stmt. ¶ 32.) However, the testimony of Carrie Wolfe, Chief Financial Officer of FTD.COM, *see* Wolfe Aff. ¶ 2, is evidence that payment was made.

5

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Cross-motions for summary judgment often require a factual perspective that our colleague, Judge Shadur, describes as Janus-like. *See, e.g., Beverage Realty, Inc. v. Chatham Club, LLC*, No. 01 C 1396, 2003 WL 444572, at *1 (N.D. Ill. Feb. 21, 2003) ("[C]ross-motions for summary judgment require a Janus-like approach in which each nonmovant's version of any disputed facts is credited so long as it is supported by record evidence.") In this case, however, virtually none of the relevant facts is disputed. Thus, what follows is an application of the law to those undisputed facts

## Discussion

In the amended complaint, Genesis alleges that its policy with FTD.COM does not provide coverage for the promissory note given to FTD, Inc. by FTD.COM because: (1) FTD.COM's transfer of money to its sole shareholder does not, as a matter of law, constitute a loss; (2) the note falls within the policy's exclusion for matters that are legally uninsurable; (3) the policy does not cover contractually-assumed losses; (4) FTD.COM's failure to secure Genesis' consent before

signing the promissory note vitiates coverage; and (5) FTD.COM has not, and will not, sustain a loss in connection with the note because the facts establish that FTD.COM has no liability for the shareholder litigation, the obligation on which the note is based.[4] We will address each argument in turn.

In relevant part, the policy defines "Loss" as "any amounts which the **Directors** or **Officers** are legally obligated to pay, such amounts which the **Company** is required to indemnify the **Directors** or **Officers**, or such amounts which the **Company** may legally indemnify the **Directors** or **Officers**, for **Claims** made against [them]." (Levine Aff. Supp. FTD.COM's Mot. Partial Summ. J., Ex. 10, Policy, Endorsement 5 at GEN 3860 (emphasis in original).) FTD.COM is both permitted by law and required by its May 3, 2002 unanimous written consent to indemnify its directors for any amount "actually and reasonably incurred" by them in connection with the shareholder litigation. *See* DEL. CODE ANN. tit. 8 § 145 (authorizing indemnification); (Levine Aff. Supp. FTD.COM's Mot. Summ. J., Ex. 5, 5/3/02 Unanimous Written Consent at F012040). In this context, incurred "means to become liable for." *Sorensen v. The Overland Corp.*, 142 F. Supp. 354, 361 (D. Del. 1956) (internal quotation marks and citation omitted), *aff'd*, 242 F.3d 70 (3rd Cir. 1957).

As Genesis points out, the FTD.COM directors did not become liable to the shareholder-plaintiffs for the settlement amount. Rather, the settlement agreement makes FTD, Inc. solely responsible for paying that sum. (*See* Levine Aff. Supp. FTD.COM's Mot. Summ. J., Ex. 6, Settlement Agreement at F018036.)

---

[4]In Count II of the amended complaint, Genesis claims that coverage is also barred by the policy's exclusion for loss covered by other insurance. Because Genesis does not raise that issue in its motion, we will not address it.

The agreement does, however, make the FTD.COM directors liable to FTD, Inc. in contribution. DEL. CODE ANN. tit. 10 § 6032 ("The right of contribution exists among joint tortfeasors."). Both the agreement and the consequent payment were made "on behalf of all Defendants." (*See* Levine Aff. Supp. FTD.COM's Mot. Summ. J., Ex. 6, Settlement Agreement at F018036.) That payment entitles FTD, Inc. to recoup from the other defendants their fair share of the settlement amount. FTD.COM says that the promissory note was the vehicle through which it indemnified its directors for that contribution liability.

Even if that is true, Genesis argues, the note is still not covered because a corporation's transfer of money to its sole shareholder, which is what FTD.COM's payment to FTDI was, does not constitute a loss. In support of this argument, Genesis cites *Safeway Stores v. National Union Fire Insurance Co.*, 64 F.3d 1282 (9th Cir. 1995). In *Safeway*, the company's shareholders sued its board for breach of fiduciary duties in connection with a leveraged buyout of the company's stock. *Id.* at 1284. Safeway settled the suit by, among other things, paying a declared dividend early so it would be collected by the plaintiff stockholders rather than the acquiring entity. *Id.* at 1285. Thereafter, Safeway sought coverage for the dividend under its directors and officers liability policy. *Id.* National Union denied coverage, and Safeway sued. *Id.* The district court held in favor of the insurer, and Safeway appealed.

The Ninth Circuit held that the dividend did not constitute a loss because Safeway would have had to pay it "with or without the settlement." *Id.* at 1286. Moreover, the court said:

> It is difficult to see how a corporation's payment of a dividend could ever be a "loss" under the terms of an insurance policy. Neither the owners of that corporation nor its directors suffered a loss. The effect of a dividend is simply to transfer corporate profits from one part of the corporation to another, that is, from the purse of the corporate entity into the pockets of the corporation's owners, the shareholders.

8

*Id.*

*Safeway* is distinguishable from this case in two respects. First, unlike the dividend payment in *Safeway*, FTD.COM's promissory note payment would not have been made absent the settlement. Second, the corporation in *Safeway* suffered no harm because no money was ever transferred out of the corporate "family." In this case, however, it is undisputed that the corporate family was depleted of millions by virtue of FTD, Inc.'s payment to the shareholder litigation plaintiffs. (*See* Levine Aff. Supp. FTD.COM's Reply Genesis' Opp'n FTD.COM's Mot. Partial Summ. J., Ex. 25, Burney Dep. at 80-81, 89.) Thus, the promissory note was not just an intra-corporate transfer, it was a reimbursement of the amount FTD, Inc. had paid to third parties. The logic of *Safeway*, therefore, does not apply.

Next, Genesis argues that the note falls within the policy's exclusion for "matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed." (*See* Levine Aff. Supp. FTD.COM's Mot. Summ. J., Ex. 10, Policy, Endorsement No. 5 at GEN 3860-61.) Genesis says that, as a matter of law, insurance does not cover restitutionary losses. Because the shareholder litigation settlement returned to the public shareholders amounts that FTD, Inc. had wrongfully acquired, Genesis says it falls into the uninsurability exception.

Genesis' argument is based on the Seventh Circuit's decision in *Level 3 Communications, Inc. v. Federal Insurance Co.*, 272 F.3d 908 (7th Cir. 2001). Level 3 arose from two insurance companies' refusal to provide directors and officers coverage to Level 3 for the amount it paid to settle a securities fraud suit. *Id.* at 909-10. The plaintiffs in the suit alleged that Level 3 fraudulently induced them to sell it their shares of stock in another corporation. *Id.* at 910. Level 3 settled the

case for more than $11 million, and argued that the settlement amount constituted a loss within the meaning of its insurance policies. *Id.* at 909-10.

The Seventh Circuit was not persuaded. The settlement, the court said, forced Level 3 to return to the stockholders money that it had, in effect, stolen from them. *Id.* at 910. As a matter of law, the court held, "[a]n insured incurs no loss within the meaning of [an] insurance contract by being compelled to return property that it [has] stolen." *Id.* at 911. Genesis contends that the settlement in this case, like the one in *Level 3*, was a disgorgement of ill-gotten gains and, thus, is not an insurable loss.

The Court disagrees. In *Level 3*, it was the insured who reaped the benefit of the allegedly unlawful stock transactions. In this case, however, it was FTD, Inc., not the insured, that benefitted from any under-valuation of FTD.COM's stock. Similarly, any ill-gotten gain was disgorged by FTD, Inc., via the settlement, not FTD.COM. FTD.COM is not seeking insurance coverage for FTD, Inc.'s payment of the settlement, but for its payment, via the note, of the anticipated contribution liability of its directors. Because FTD.COM is not seeking coverage for a restitutionary loss, its claim is not barred by *Level 3*.

Genesis also says that the note is not covered by the policy because coverage does not extend to contractually-assumed losses. Rather, the policy applies only to losses that arise from claims made against the directors and officers. (*See* Levine Aff. Supp. FTD.COM's Mot. Summ. J., Ex. 10, Policy, Endorsement 5 at GEN 3860.) Because FTD, Inc. did not make a claim – that is, file a suit or make a written or oral demand – for contribution from the directors, Genesis says there is no coverage for FTD.COM's purported indemnification of that liability.

10

The Court disagrees. First, the policy does not restrict the term "claim" to demands made on the FTD.COM directors. Rather, the policy says that a claim is, among other things, a demand for money made "against an insured party." (*See id.*) FTD.COM is an insured party. (*See id.* at GEN 3846 (identifying FTD.COM as the "Insured Entity").) Thus, the fact that FTD, Inc. made a demand on FTD.COM, as the existence of the note suggests, rather than the directors, does not necessarily preclude coverage.

Moreover, the language of the insuring agreement is broad enough to cover the note. The policy's insuring agreement requires Genesis to pay loss for which FTD.COM may indemnify its directors "arising from **Claims** first made during the **Policy** . . . **Period** against the **Directors**." (*See id.* at GEN 3847 (emphasis in original).) The policy does not say that Genesis is only required to pay if FTD.COM indemnifies the directors for payments they make directly to claimants. It simply says that the indemnification must *arise* from claims made against the directors. To the extent the note indemnifies the directors for the contribution liability that arises from the claims the shareholders made against them, it falls within that language.

Next, Genesis argues that the policy's "consent to settlement" clause precludes coverage. In relevant part, that clause provides that "[t]he **Directors, Officers** and the **Company** shall not admit liability for or settle any **Claim**, . . . without the **Insurer's** prior written consent." (*See* Levine Aff. Supp. FTD.COM's Mot. Summ. J., Ex. 10, Policy at GEN 3852 (emphasis in original).) Moreover, it says that "[a]ny . . . settlements . . . agreed to prior to the **Insurer's** consent thereto shall not be covered by this Policy." (*Id.* (emphasis in original).) FTD.COM signed the promissory note without seeking Genesis' consent. (FTD.COM's LR 56.1(b)(3)(A) Stmt. ¶ 88.) Thus, Genesis says, any loss FTD.COM suffered in connection with the note is not covered.

11

This time the Court agrees. It is reasonable to infer from the existence of the note that FTD, Inc. made a claim, that is, a demand for money, on FTD.COM. That demand for money was premised on Hill and Owen's anticipated contribution liability for the shareholder litigation. Thus, the promissory note settled a claim for the directors' allegedly wrongful act, within the meaning of the policy. As such, FTD.COM was required by the policy to obtain Genesis' consent before signing the note.

Even if FTD.COM had secured Genesis' consent, however, the inchoate nature of its indemnification obligation would still preclude coverage. The policy covers loss for which FTD.COM may or must indemnify its directors. The FTD.COM board, via the May 3, 2002 unanimous written consent, authorized the company to indemnify its directors "from and against all expenses . . . and amounts paid in settlement actually and reasonably incurred by [the directors] in connection with the [shareholder] Litigation." (Levine Aff. Supp. FTD.COM's Mot. Summ. J., Ex. 5, 5/3/02 Unanimous Written Consent at F012040.) According to Delaware law, which controls the interpretation of FTD.COM's corporate documents, an indemnity claim accrues "when indemnitor-liability becomes fixed and ascertained" or when "the indemnitee has made payment or has actually suffered loss or damage." *See Sorensen*, 142 F. Supp. at 361. It is undisputed that neither of those conditions has occurred.

The settlement agreement does not require the directors to pay, or assign them responsibility for, any portion of the settlement amount. (Levine Aff. Supp. FTD.COM's Mot. Summ. J., Ex. 6, Settlement Agreement at F018036.) The same is true for the promissory note, which explicitly acknowledges that no apportionment of liability has yet been made:

> Notwithstanding anything herein to the contrary, if it is determined pursuant to [this suit] that the liability of [FTD.COM] pursuant to the [shareholder litigation] is for an amount less than the Settlement Amount (such lesser amount, the "Final Amount"), [FTD.COM] shall only be obligated to pay such lesser amount (together with interest thereon as provided herein) in full satisfaction of this Note; provided that if [FTD.COM] has previously paid to FTDI an aggregate amount in excess of the Final Amount and interest with respect thereto, FTDI shall reimburse [FTD.COM] for any such excess amount.

(*Id.*, Ex. 8, Promissory Note at F015637.) Because neither the note nor the settlement agreement on which it is based caused the directors any damage or fixed FTD.COM's indemnitor liability, the note does not constitute a loss within the meaning of the policy.

Moreover, the undisputed facts of this case establish that it never will be a loss. The note makes FTD.COM responsible only for that portion of the settlement amount for which it is responsible. (*See id.*) The policy provides coverage for the same amount. (*Id.*, Ex. 10, Policy, Endorsement No. 5 at GEN 3863.) Thus, the note can only be a loss if FTD.COM has liability for the shareholder litigation.

As FTD.COM admits, its liability in that proceeding depends entirely on the liability of its indemnitees, Hill and Owen. (FTD.COM's Mem. Supp. Mot. Partial Summ. J. at 11.) Hill and Owen are on the hook only if they breached the duties of "due care, good faith, and loyalty" that they owed to the minority stockholders. *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). The undisputed evidence establishes that Hill and Owen are not liable for breaching these duties.

As Genesis correctly points out, FTD.COM's certificate of incorporation insulates Hill and Owen for liability for any breaches of the duty of due care, a provision sanctioned by the Delaware corporations law. (*See* Crosno Decl., Ex. 2, FTD.COM's Certificate of Incorporation at FTD002352); DEL. CODE ANN. tit. 8 § 102(b)(7) (authorizing corporations to include in certificate

13

of incorporation a provision that eliminates directors' personal liability for breach of the duty of due care). Thus, FTD.COM could not be liable for any breaches of Hill or Owen's duty of due care.

Moreover, Delaware law prohibits FTD.COM from indemnifying its directors for breaches of the duty of good faith. *See* DEL. CODE ANN. tit. 8 § 145 ("A corporation shall have power to indemnify any person who was or is a party . . . to any threatened, pending or completed action . . . by reason of the fact that the person is or was a director . . . of the corporation . . . if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation . . . ."); *VonFeldt v. Stifel Fin. Corp.*, No. Civ. A. 15688, 1999 WL 413393, at *2 (Del. Ch. June 11, 1999) ("It should now be clear that, as far as § 145 is concerned, Delaware corporations lack the power to indemnify a party who did not act in good faith or in the best interests of the corporation."). Therefore, even if Hill and Owen acted in bad faith, FTD.COM would not be liable for their actions.

FTD.COM does not quarrel with those propositions, but contends that it still faced exposure in the shareholder litigation for Hill and Owen's breach of the duty of loyalty. It is not clear, however, that the duties of good faith and loyalty are distinct. The Delaware corporations statute suggests that they are, *see* DEL. CODE ANN. tit. 8 § 102(b)(7) (authorizing corporations to "eliminat[e] . . . the personal liability of a director . . . for monetary damages for breach of fiduciary duty" as long as the liability for "breach of the director's duty of loyalty" and "for acts or omissions not in good faith" is retained), and the Delaware Supreme Court has referred to "the *triads* of . . . fiduciary duty – good faith, loyalty [and] due care." *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993), *modified in part on other grounds*, 636 A.2d 956 (Del. 1994). But neither the Legislature nor the court has explained where the line, if any, between the duties lies. In fact, after describing a

14

director's duties as three-fold, the *Cede* court equates good faith with loyalty: "[A] board's actions must be evaluated in light of relevant circumstances to determine if they are undertaken with due diligence [care] and good faith [loyalty]." *Id.* at 368 n.36 (internal quotation marks and citation omitted).

In the face of these ambiguous pronouncements, a number of lower Delaware courts have concluded that good faith and loyalty are synonymous. In the words of one court:

> The General Assembly could contribute usefully to ending the balkanization of the duty of loyalty by rewriting § 102(b)(7) to make clear that its subparts all illustrate conduct that is disloyal. For example, one cannot act loyally as a corporate director by causing the corporation to violate the positive laws it is obliged to obey. Many recent events have only emphasized the importance of that obvious component of the duty of loyalty. But it would add no substance to our law to iterate a "quartet" of fiduciary duties, expanded to include the duty of "legal fidelity," because that requirement is already a subsidiary element of the fundamental duty of loyalty. The so-called expanded "triad[ ]" created by *Cede II,* I respectfully submit, is of no greater utility.

*Guttman v. Huang,* 823 A.2d 492, 506 n.34 (Del. Ch. 2003) (internal citations omitted); *see In re Gaylord Container Corp. S'holders Litig.,* 753 A.2d 462, 475 n.41 (Del. Ch. 2000) (stating that "the subsidiary requirement to act in good, rather than bad, faith toward the company and its stockholders" would "logically rest" within the duty of loyalty). As persuasive as this reasoning is, we are bound to follow the law as set forth by the Delaware Supreme Court. Because that court views good faith and loyalty as separate fiduciary duties, we must view them separately as well.

In *Cede,* the Delaware Supreme Court said "the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." 634 A.2d at 361; *see In re Lukens Inc. S'holders Litig.,* 757 A.2d 720, 731 (Del. Ch. 1999) (describing breach of duty

15

of loyalty as a "personal interest divergent from shareholder interest"). The duty of good faith requires the fiduciary to act "honestly . . . to advance the best interests of the company." *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 289 (Del. Ch. 2003). A breach of the duty of good faith occurs when the fiduciary "*consciously and intentionally disregard[s] [his] responsibilities, adopting [an] '[I] don't care about the risks' attitude concerning a material corporate decision.*" *Id.* (emphasis in original); *see In re Lukens*, 757 A.2d at 731 (stating that the corporate action taken with "illicit motivation" breaches the duty).

Much of the evidence FTD.COM offers to support its breach of loyalty claim falls under the rubric of due care or good faith. FTD.COM points out, for example, that Hill and Owen did not ask their financial advisers to update their opinion about the fairness of the merger after the stock price dropped. (*See* Levine Aff. Supp. FTD.COM's Reply, Ex. 36, Hill Dep. at 203, 209.) FTD.COM also says that Hill and Owen did not do "a good enough job of subjecting the [financial] report to scrutiny and holding [their financial advisors'] feet to the fire about the precision of their analysis." (*Id.*, Ex. 31, Dimitrief Dep. at 36.) If Hill and Owen failed to scrutinize the financials appropriately, either before or after the merger was announced, they could be guilty of breaching their duties of due care or good faith. *See In re Walt Disney*, 825 A.2d at 289 (defining breach of the duty of good faith as conscious and intentional disregard of responsibilities); *McMullin v. Beran*, 765 A.2d 910, 921 (Del. 2000) ("Director liability for breaching the duty of care is predicated upon concepts of gross negligence.") (internal quotation marks and citation omitted). But that omission, standing alone, does not suggest that Hill and Owen placed their own, or anyone else's, interest above that of the public stockholders, the essence of a loyalty breach. *See Cede*, 634 A.2d at 361; *In re Lukens*, 757 A.2d at 731.

Certainly, Hill and Owen had no personal, financial interest in the merger. It is undisputed that they were not directors or officers of IOS or FTD, Inc. and did not own any IOS or FTD, Inc. stock prior to the merger. (FTD.COM's LR 56.1(b)(3)(A) Stmt. ¶¶ 26-27.) Though both men had options for FTD.COM stock, there is no dispute that those options were worth only $3,000.00 and, at the time of the merger, were exchanged for FTD, Inc. stock at the same ratio as was the stock of the public shareholders. (Genesis' LR 56.1(b)(3)(A) Stmt. ¶¶ 43-44.) In fact, FTD.COM's expert witness, Alexander Dimitrief, testified that Hill and Owen's stock options made their personal financial interest "align[] 100 percent . . . with those of the minority shareholders whose interest[s] they were representing." (Crosno Decl., Ex. 4, Dimitrief Dep. at 22.)

Though Hill and Owen had no financial interest in the merger, FTD.COM says they put two other interests above those of the public shareholders: their desires to avoid litigation and close the deal. The former contention is based on Owen's testimony that the drop in FTD.COM's stock price after the merger announcement did not cause him to question the fairness of the transaction, but it "raised concerns about the fact that shareholders had lost money and we were subject to litigation." (Levine Aff. Supp. FTD.COM's Reply, Ex. 37, Owen Dep. at 196.) If Owen had made that concern paramount, however, he would have reopened the negotiations, even at the risk of scotching them altogether, to try to secure a litigation-proof deal. Instead, he stuck with the deal that he still believed was fair, *see id.*, despite the risk of a lawsuit. Thus, Owen's testimony does not support the inference that the shareholder's interests took a backseat to his fears of litigation.

FTD.COM's second argument, that Hill and Owen wanted to close the deal regardless of its impact on the public shareholders, is also based on Owen's testimony. Owen was asked whether "the Special Committee continued to exist or . . . [was] disbanded [after the merger deal was signed

17

and approved by the FTD.COM board]?" (*Id.* at 190.) Owen said he thought the Committee would continue to exist in the sense that it would monitor the transaction. (*Id.*) Then the following colloquy occurred:

> Q. What do you mean by monitoring the situation with respect to the transaction? Does that mean to see the deal through to fruition?
>
> A. Yes, I think to monitor the events that took place post the deal being signed and approved by the board and to make sure that there was continued execution on the path of the deal.

*Id.* FTD.COM says that testimony suggests Hill and Owen were determined to close the deal they had negotiated, regardless of the consequences for the public shareholders.

Even if that is an appropriate inference, however, it would suggest a breach of loyalty only if there were evidence that closing the deal somehow furthered Hill or Owen's personal interest or the interests of a third party they favored. *Cede*, 634 A.2d at 361; *In re Lukens*, 757 A.2d at 731. There is not. FTD.COM has offered no facts that suggest Hill or Owens would benefit personally from the transaction – in fact, it is undisputed that they would not – or that their desire to curry favor with, or bestow a benefit upon, someone other than the public stockholders animated their drive to close the deal. Absent such evidence, we cannot infer that Hill and Owen breached the duty of loyalty. Because there is no evidence to suggest that FTD.COM had any liability for the shareholder litigation, the promissory note, which is premised on that liability, does not now, and never will, constitute a loss within the meaning of the policy.

## Conclusion

For the foregoing reasons, there is no genuine issue of material fact on the claims and counterclaims in this suit, and Genesis is entitled to judgment as a matter of law. Genesis' motion for summary judgment [doc. no. 51] is, therefore, granted and FTD.COM's motion for partial summary judgment [doc. no. 47] is denied. The Court hereby enters judgment declaring that Genesis' Policy YXB002259A provides no coverage to FTD.COM for the amounts it paid to FTDI pursuant to the promissory note. This is a final and appealable order.

**SO ORDERED.**                              **ENTERED:**

*[signature]*
HON. RONALD A. GUZMAN
**United States District Judge**

*March 25, 2005*